**LONG v. COMMISSIONER OF INTERNAL REVENUE.**

**COMMISSIONER OF INTERNAL REVENUE v. LONG.**

No. 12306.

United States Court of Appeals
Fifth Circuit.

March 17, 1949.

Harry C. Weeks, of Fort Worth, Tex., for petitioner.

Theron L. Caudle, Asst. Atty. Gen., Chas. Oliphant, Chief Counsel, Bureau of Internal Revenue, and Claude R. Marshall, Sp. Atty. Bureau of Internal Revenue, both of Washington, D. C., and Ellis N. Slack, Helen Goodner, and Hilbert P. Zarky, Sp. Assts. to Atty. Gen., for respondent.

Before HUTCHESON, HOLMES, and LEE, Circuit Judges.

LEE, Circuit Judge.

Petition and cross petition for review of a decision of the Tax Court of the United States bring this case before us. That Court decided that there were deficiencies in income tax paid by L. F. Long for the calendar years 1940 and 1941 in the amounts of $13,333.35 and $4,345.40, respectively. The Commissioner of Internal Revenue assails that portion of the Tax Court's findings of fact and opinion which held the gain made by taxpayer Long at the time of his withdrawal from a partnership was a capital gain rather than partly capital gain and partly regular income. Long, on the other hand, agreeing with the Court's decision on that point, assails the holding which precludes his deduction of a sum paid his first wife in a divorce settlement of community property as part of the cost basis of a partnership interest sold. Contentions of both parties relate to that part of the Tax Court's decision which fixed the 1940 deficiency, and no question is raised with reference to the deficiency assessed for 1941.

As regards the Commissioner's contention, we believe the Tax Court was correct in holding that Long sold an interest in the partnership, a capital asset, rather

472

than his share in each of the assets owned in partnership with his father and step-mother. At this time it is unnecessary to enter upon a detailed discussion of the law dictating this decision, rather, we make reference to our decision on the same point in Commissioner of Internal Revenue v. Smith, 5 Cir., 173 F.2d 470.

The facts necessary to the adjudication of the taxpayer's claim are as follows: He has been a resident of Texas since 1931. In that year he owned a ¼ interest in a partnership, the Joe Long Drilling Co. In 1932, he increased his interest, by purchase, to ⅓. The other ⅔ were held by his father and step-mother. Long was married in 1923, and by Texas law his ⅓ partnership interest constituted community property of his wife, Minnie Pearl Long, and himself. On September 1, 1938, Minnie Long filed suit for divorce. In due course, on October 5, 1938, a decree of divorce was granted, giving Minnie Pearl Long custody of their four minor children. The court rendering that decision approved a settlement agreement[1] concerning right, title, and interest in the community property and providing for the support, education, custody, and rearing of the children. The agreement gave outright to the wife the home and its furnishings, valued at $8,500, and one Buick automobile, valued at $1,369.50. In addition to relinquishing his interest in these assets, the taxpayer unconditionally obligated himself to acquire: (1) Insurance on his wife's life to pay her a monthly annuity of $100 for life, as trustee for their four children equally until each child should reach twenty-one, when the remaining minor children should share equally in benefit. When all children reached twenty-one, the beneficial interest was to vest in the wife, with any balance remaining at her death to go to the children or their heirs. (2) A $5,000 single-premium insurance policy on his wife's life, naming the four children and their heirs as beneficiaries. In addition to

---

[1] The following is a paraphrase of the pertinent paragraphs of the agreement:

1. Leland F. Long agrees to secure a policy of insurance on the life of Minnie Pearl Long, which will pay $100 monthly to her during life, as Trustee for the four children, each sharing equally in the beneficial interest until such time as he or she shall reach the age of twenty-one years, at which time he or she shall cease to have any further beneficial interest in said policy, and the remaining children under twenty-one years of age shall share equally in beneficial interest until the last child reaches the age of twenty-one, at which time the whole beneficial interest in said policy shall vest in the said Minnie Pearl Long; should there be any cash or refund value on said policy at her death that the same shall vest in and be payable to said four children.

2. In addition Leland F. Long agrees to procure an insurance policy on the life of the said Minnie Pearl Long with a single premium in the sum of $5,000, with the four above named children as beneficiaries.

3. Leland F. Long further agrees, within two years after a decree of divorce, to procure two additional policies on the life of Minnie Pearl Long, each of said policies to pay her not less than $90 and not more than $100 per month during her life, with the above named four children beneficiaries of any funds that may remain payable on said policies that the death of Minnie Pearl Long, and further agrees that until such time as said policies are procured to pay to the said Minnie Pearl Long monthly the sum of $200, provided, however, that when one of such policies is secured, said monthly payments from Leland F. Long shall cease, and further provided that said Leland F. Long shall have the option at any time within said two years' period of not procuring either of said policies, in which event the said Minnie Pearl Long shall have and hold an undivided two-thirds of one-half (⅔ of ½) interest in and to the community property of the said Minnie Pearl Long and the said Leland F. Long; provided, however, that if the said Leland F. Long, shall have procured one of said policies and does not procure both, then the said Minnie Pearl Long shall have and hold an undivided one-third of one-half (⅓ of ½) interest in and to said property.

4. Leland F. Long further agrees that in the event the said Minnie Pearl Long should die within two years after the entry of said decree of divorce, and before either of said two last above mentioned insurance policies shall have been procured, he will, within said period of two years, in lieu of procuring such policies, create a trust fund with the sum which would be required to purchase said policies for the use and benefit equally of said four children.

the foregoing policies of insurance, the husband agreed to obtain, within two years of the divorce, two additional policies of insurance on the life of his wife, each to pay her an annuity of not less than $90 nor more than $100 per month, with the children and their heirs named as beneficiaries of any residual funds at her death. Until these policies were taken out, the taxpayer was to pay his wife $200 a month in lieu of both policies, or $100 per month in lieu of one policy after one had been obtained. However, the purchase of these last two policies of insurance was optional, and, if he exercised his option not to purchase the policies during the two-year period, his wife was to have and hold an undivided ⅔ of ½ interest in their community property; if he exercised the option as to only one policy, she then was to have an undivided interest of ⅓ of ½ of their community property.

Since the agreement gave Mrs. Long outright ownership of the house, its furnishings, and the automobile, the ⅔ of ½ of the community she would retain under the foregoing portion of the agreement, would relate to the balance of the community assets, which consisted of one Buick automobile, valued at $1,300, bank deposits, valued at $11,000, ten acres of land in California, valued at $25, stock in the Cushing Drilling Co., valued at $36.31, and the community's ⅓ partnership interest in the Joe Long Drilling Co.

Both the policy of insurance paying the wife as trustee for the benefit of the children and the single-payment $5,000 policy on the wife's life, with the children and their heirs named as beneficiaries, were purchased on or soon after the date of the divorce.[2] At about the same time, Mrs. Long signed away her right, title, and interest to the community property, except that she retained a vendor's lien until the taxpayer performed all of the terms of the agreement. Later, in October 1939, the first of the two optional policies was obtained, at a cost of $26,895.30; and, in August 1940, the second optional policy was obtained, costing $26,644.50. The above-

mentioned lien was released by an instrument executed on August 21, 1940, by Minnie Pearl Long joined by her second husband.

In agreement with the contention of the Commissioner, the Tax Court found that all payments made by the husband in accordance with the terms set up in the agreement were, in fact, primarily for the benefit of the children of the marriage, and that those payments could not be set up as the purchase price of the wife's half of the community. With this decision we are not entirely in agreement, for it seems to us that the provisions of the third paragraph of the agreement were in fact for the benefit of the wife and were by the express terms of this paragraph the quid pro quo for the ⅔ of the ½ of the community allocable to the wife. To seize upon the phrase of this portion of the agreement which allocates any remainder of payment at the wife's death to the children and thereby twist the provision into one primarily for the children, is to create an unjustified conclusion. As well, the paragraph creating a trust for the children in the event of Mrs. Minnie Long's death within the two-year period following the divorce and prior to the acquisition of the optional policies of insurance does not materially substantiate the finding that the purchase of those policies was primarily for the children's benefit. Rather, this is an expression of Mrs. Long's intent that the money must be paid in some form before Long could own the interest conditionally conveyed and further describes those persons to whom she wishes her property to devolve upon the event of her death. Both of these provisions relied upon below are no more than evidence of the desire of the wife to have her assets derived from the sale of that portion of the community referred to in paragraph 3 of the agreement go to her children in the event of her death. Paragraph 3 of the agreement was optional. By the exercise of the option not to purchase insurance, taxpayer would place full ownership of an undivided ⅔ of half the community in

---

[2] The annuity with the wife as trustee was purchased on the 5th of October 1938, at a cost of $29,383. The $5,000 life policy was purchased on November 1, 1938, at a cost of $1,816.95.

his wife. By purchasing the insurance, he received the ⅔ of the half interest in the community, and provided, through the agency of insurance, a capital sum for his divorced wife, which sum paid a regular income to her, with no qualification as to its expenditure. It is clear that the wife had the income to do with as she desired; and it is equally clear that had the taxpayer not created this fund, he would not have acquired the wife's ⅔ of ½ interest in the community. The fact that this paragraph and the one following contained the direction as to disposition of the fund after the wife's death did not change the character of the payment.

We are, however, in accord with the Tax Court's view insofar as it relates to those provisions of the agreement creating an insurance fund for payment to the wife as trustee for the children's benefit and calling for the purchase of a single-premium life policy naming the children as beneficiaries. Clearly the wife was to receive no primary beneficial interest in these funds; but rather the funds were for the support and rearing of the children.

It is apparent that the monthly payments under the policy to the wife as trustee for the benefit of the children during their minority would, to the extent of the payment, relieve the taxpayer of his parental obligation to support and care for the children. After the minors reached twenty-one, it was provided that the monthly payments should become the property of the wife until her death, when any value remaining would go to the children equally. The wife's economic interest under this part of the agreement has not been shown by the taxpayer. The extent, therefore, to which the taxpayer relieved himself of a paternal obligation and the extent to which the wife may profit from this policy cannot be determined on the facts shown. We cannot assume that the taxpayer paid an amount in excess of this obligation, either more or less than the original cost to the community of a ⅙ interest belonging to the wife.

The preamble of the agreement stated that:

" * * * certain community property owned by Leland F. Long and Minnie Pearl Long in the State of Texas and elsewhere, hereinafter referred to, is involved in this litigation, and said parties have agreed to the following settlement of their respective rights, titles, and interests in and to the same; and,

" * * * both of said parties hereto also desire at this time to make a provision for the support, education, custody and rearing of their four minor children, to-wit: Virginia Ladine Long, Mary Jo. Long, Dorothy Pearl Long and William Carl Long."

The interpretation we place on the words of this agreement adheres to the express intent and does no injustice to its wording. While the taxpayer did not, by his purchase of the two insurance policies which provided for the up-bringing of his children, engage in any purchase of his wife's interest in the community but rather performed an obligation which he owed according to law, the terms of the agreement are divisible into two separate categories, and the purchase of an insurance fund for the wife's benefit in accordance with the optional provision of the agreement vested him in turn with title to the ⅔ of half the community property which could have been withheld by the wife and amounted to a purchase and sale. Rouse v. Comm. Int. Rev., 5 Cir., 159 F.2d 706.

We hold the taxpayer is entitled to set up as a cost base such portion of the amount he paid his wife under paragraph 3 which may be allocated as the price paid for ⅔ of ½ of her community interest in the drilling company. With this conclusion, it becomes necessary that we return the matter to the Tax Court for redetermination of the tax.

Accordingly, the judgment of the Tax Court is set aside, and the cause is remanded for further proceedings not inconsistent with this opinion.