**Henry KINNEY and Anita Kinney**

**v.**

**UNITED STATES of America.**

**Civ. A. No. 9351.**

United States District Court
W. D. Louisiana,
Lake Charles Division.
March 24, 1964.

Kaufman, Anderson, Leithead Scott & Boudreau, Lake Charles, La., for plaintiffs.

Edward L. Shaheen, U. S. Atty., E. V. Boagni, Asst. U. S. Atty., Shreveport, La., Jerome J. Reso, Jr., Tax Division U. S. Dept. of Justice, Washington, D. C., for the United States.

HUNTER, Judge.

This is an action for the recovery of $10,679.37, plus interest, paid as income tax for the year 1958.

### QUESTION PRESENTED

Whether the loss of $36,971.81 should be treated as an ordinary loss, as contended by the taxpayers, or as a capital loss, as contended by the Government.

STATUTES AND REGULATIONS INVOLVED

The pertinent statutes and Regulations are:

Internal Revenue Code of 1954:

"§ 708. Continuation of partnership

"(a) General Rule.—For purposes of this subchapter, an existing partnership shall be considered as continuing if it is not terminated.

"(b) *Termination.*—

"(1) *General Rule.*—For purposes of subsection (a), a partnership shall be considered as terminated only if—

"(A) no part of any business, financial operation, or venture of the partnership continues to be carried on by any of its partners in a partnership, or

"(B) within a 12-month period there is a sale or exchange of 50 percent or more of the total interest in partnership capital and profits.

\* \* \* \* \* \*

(26 U.S.C. 1958 ed. § 708)"

"§ 731. EXTENT OF RECOGNITION OF GAIN OR LOSS ON DISTRIBUTION

"(a) *Partners.*—In the case of a distribution by a partnership to a partner—

"(1) gain shall not be recognized to such partner, except to the extent that any money distributed exceeds the adjusted basis of such partner's interest in the partnership immediately before the distribution, and

"(2) loss shall not be recognized to such partner, except that upon a distribution in liquidation of a partner's interest in a partnership where no property other than that described in subparagraph (A) or (B) is distributed to such partner, loss shall be rec-

ognized to the extent of the excess of the adjusted basis of such partner's interest in the partnership over the sum of—

"(A) any money distributed, and

"(B) the basis to the distributee, as determined under section 732, of any unrealized receivables (as defined in section 751(c)) and inventory (as defined in section 751(d) (2)).

Any gain or loss recognized under this subsection shall be considered as gain or loss from the sale or exchange of the partnership interest of the distributee partner.

\* \* \* \* \* \*

(26 U.S.C.1958 ed. § 731.)"

"§ 735. CHARACTER OF GAIN OR LOSS ON DISPOSITION OF DISTRIBUTED PROPERTY

"(a) Sale or exchange of certain distributed property.—

\* \* \* \* \* \*

"(2) Inventory items.—Gain or loss on the sale or exchange by a distributee partner of inventory items (as defined in section 751 (d) (2)) distributed by a partnership shall, if sold or exchanged within 5 years from the date of the distribution, be considered gain or loss from the sale or exchange of property other than a capital asset."

"§ 741. RECOGNITION AND CHARACTER OF GAIN OR LOSS ON SALE OR EXCHANGE

"In the case of a sale or exchange of an interest in a partnership, gain or loss shall be recognized to the transferor partner. Such gain or loss shall be considered as gain or loss from the sale or exchange of a capital asset, except as otherwise provided in section 751 (relating to unrealized receivables and inventory

items which have appreciated substantially in value).

(26 U.S.C.1958 ed. § 741.)".

Treasury Regulations on Income Tax (1954 Code):

SEC. 1.708-1. CONTINUATION OF PARTNERSHIP.

(a) *General rule.* For purposes of subchapter K, chapter 1 of the Code, an existing partnership shall be considered as continuing if it is not terminated.

(b) *Termination.*—(1) *General rule.* (i) A partnership shall terminate when the operations of the partnership are discontinued and no part of any business, financial operation, or venture of the partnership continues to be carried on by any of its partners in a partnership. For example, on November 20, 1956, A and B, each of whom is a 20-percent partner in partnership ABC, sell their interests to C, who is a 60-percent partner. Since the business is no longer carried on by any of its partners in a partnership, the ABC partnership is terminated as of November 20, 1956. However, where partners DEF agree on April 30, 1957, to dissolve their partnership, but carry on the business through a winding up period ending September 30, 1957, when all remaining assets, consisting only of cash, are distributed to the partners, the partnership does not terminate because of cessation of business until September 30, 1957.

\* \* \* \* \* \*

(26 C.F.R., Sec. 1.708-1)

## THE FACTS

Prior to July 1, 1958, the taxpayer,[1] Henry Kinney, and Edward J. Stine operated the Orange Rice Milling Company in Orange, Texas, as a partnership. (Tr. 35, 74). Mr. Kinney spent little time at the mill and its day-to-day operations were conducted by Mr. Stine. (Tr. 35, 76).

In the early part of 1958 disagreements arose between the two men and they began discussing the termination of their partnership association. (Tr. 36, 74–75). Stine, who wanted to operate the mill as an individual, made an offer to buy out Kinney's interest and further proposed that they divide various land holdings in kind. (Tr. 36, 75; Ex. P–14). Kinney wanted to get out of the mill and discussed selling his interest to Stine. (Tr. 36–37, 44, 75; Ex. P–14). The men negotiated for some time and ultimately each placed the matter in the hands of their respective attorneys for resolution. (Dep. 5–6; Tr. 43, 44, 75–76). The taxpayer was represented by Norman F. Anderson (Tr. 43) and Stine was represented by Richard A. Anderson (Dep. 3). Since the taxpayer wanted to get out of the mill (Tr. 36, 37), his attorney approached the negotiations with the view to sell out or liquidate the business (Tr. 43–44). Conversely, since Mr. Stine wanted to acquire the mill and continue to operate it individually (Tr. 36, 44, 75, 76; Dep. 6, 12), he instructed his attorney to negotiate to purchase Mr. Kinney's interest (Dep. 5–6, 7, 12).

In May or June, 1958, a proposal to buy the taxpayer's interest was made to his attorney by Mr. Stine's attorney but it was turned down and negotiations reached somewhat of an impasse. (Tr. 44–45; Dep. 6–7). On June 10, 1958, the taxpayer gave notice to Mr. Stine that he wished to terminate the partnership as of June 30, 1958. (Ex. P–4) This was done in order to prevent Mr. Kinney from being obligated for new business which would start on July 1, 1958. (Tr. 58, 62). The taxpayer did not wish to end negotiations for the sale of his interest, however, and both attorneys continued to discuss the terms and conditions of the sale. (Tr. 63–64;

---

1. Since Mrs. Kinney is a party to this action only because a joint return was filed for the year 1958, the use of the term "taxpayer" in the singular will refer only to the plaintiff-husband, Henry Kinney.

Dep. 7–8; Ex. P–2). Arrangements were also worked out so that Mr. Stine could continue operating the mill while the negotiations were in progress. (Tr. 63–64, 72; Dep. 7; Ex. P–5).

Finally, on June 14, 1958, Richard Anderson, on behalf of Mr. Stine, proposed to buy Mr. Kinney's interest in the partnership on the following terms: The fixed assets were to be transferred to a Texas corporation, which would be formed, in exchange for all of the stock of the corporation which would be distributed equally to Messrs. Stine and Kinney; Mr. Stine was to have an option to purchase Mr. Kinney's stock for $110,000 on terms, or $85,000 in cash; Mr. Stine was to acquire Mr. Kinney's remaining interest in the business by cancelling certain obligations owed to it by the partners, assuming all of the liabilities, and paying Mr. Kinney an additional $172,000. (Tr. 47–48; Dep. 8–9). In his capacity as the taxpayer's representative, Norman Anderson made a counterproposal pertaining to a change in the form of security for the notes Mr. Stine was to give to the taxpayer, and further proposed that the purchase price for the taxpayer's interest in the partnership which would remain after the transfer to the corporation be allocated to the individual assets at book value with the loss being absorbed in the inventory. (Tr. 48–49, 51–52, 65; Dep. 9, 15–16, 22–27).

This proposal was acceptable to both parties and the respective attorneys began drafting the various instruments for signature. (Dep. 10). Finally, on July 7, 1958, the parties executed five documents reciting:

1. That the land and improvements owned by the partnership were transferred to the newly formed corporation, Orange Rice Milling Company, Inc., in exchange for its stock, said stock divided equally between Stine and Kinney. (Ex. P–7).

2. That the depreciable, movable property owned by the partnership was transferred to the newly formed corporation, Orange Rice Milling Company, Inc., in exchange for its stock, said stock divided equally between Stine and Kinney. (Ex. P–8).

3. That the Orange Rice Milling Company partnership be dissolved as of June 30, 1958. (Ex. P–6).

4. That Mr. Stine was granted an option to purchase the taxpayer's stock in the new corporation. (Ex. P–9).

5. That the taxpayer conveyed his interest in all of the other assets of the partnership to Mr. Stine, for $172,000, plus the assumption by Mr. Stine of all of the liabilities of the partnership and the cancellation of certain debts owed by the partners. (Ex. P–10).

The document reciting the sale of the taxpayer's remaining interest in the partnership after the transfer to the corporation allocated the purchase price to the individual assets on this basis (Ex. P–10):

| Asset | Consideration |
|---|---|
| A. Cash, receivables, claims, securities | Book value |
| B. Sublease, trade names, patents, goodwill | Zero |
| C. Inventory | Remaining selling price in excess of items denoted in A. |

Applying this formula to the assets of the partnership as shown by the balance sheet as of June 30, 1958, the following amounts were allocated to the respective assets (Exs. P–10, P–13):

| | Partnership | Kinney's ½ | Selling Price |
|---|---|---|---|
| Cash | $ 8,645.56 | $ 4,322.78 | $ 4,322.78 |
| Notes Rec. | 105,409.05 | 52,704.52 | 52,704.52 |
| Interest Rec. | 2,848.55 | 1,424.28 | 1,424.28 |
| Accts. Rec. – Trade | 279,161.67 | 139,580.83 | 139,580.83 |
| Accts. Rec. – Misc. | 24,762.75 | 12,381.38 | 12,381.38 |
| Employees | 11,098.44 | 5,549.22 | 5,549.22 |
| Transit Claim | 14,194.65 | 7,097.32 | 7,097.32 |
| Inv. | 217,182.33 | | |
| Inv. – Rough | 1,287,170.27 | 764,874.17 | 727,897.36 |
| Inv. Mat. & Sup. | 25,395.74 | | |
| Securities | 1,200.00 | 600.00 | 600.00 |
| Prepaid Exp. | 4,776.22 | 2,388.11 | 2,388.11 |
| Uniform a/c | 12.95 | 6.48 | 6.48 |
| | $1,981,858.18 | 990,929.09 | 953,952.28 |
| Liabilities | $1,563,904.56 | 781,952.28 | 781,952.28 |
| | $ 417,953.62 | 208,976.81 | 172,000.00 |

On July 31, 1958, Mr. Stine exercised the option and discount feature by purchasing the taxpayer's stock in the newly formed corporation for $85,000. (Tr. 70–71). In their income tax return for 1958 the taxpayers reported a long-term capital loss on the sale of the stock in the amount of $61,233.85 computed as follows: (Ex. D–2)

Cost or other basis in stock
determined by basis in assets $171,233.85
Selling price 110,000.00

$ 61,233.85

They also reported an ordinary loss of $18,033.12 and claimed that it was sustained on the sale of inventory to Mr. Stine. This loss was computed as follows: (Ex. D–2)

Sale of inventory received upon
dissolution of Orange Rice
Milling Co. (Partnership)
Acquired 6–30–58 at a cost of $922,132.05
Sold 7–7–58 for 904,098.93

Loss $ 18,033.12

Upon audit of the return, the Internal Revenue Service contended that several errors had been made in reporting the items listed above. The taxpayer's basis in the stock was found to be $152,290.16, rather than $171,233.85, and the selling price was discovered to be $85,000, rather than $110,000. The result of these adjustments was to allow a capital loss of $67,290.16, rather than $61,233.85 as had been reported. The determination was also made that the taxpayers did not sustain an ordinary loss of $18,033.12 on the sale of inventory, as had been reported, but that instead, a long-term capital loss of $36,976.81 was sustained on the sale of his remaining partnership interest computed as follows:

Basis of Mr. Kinney's one-
half interest in partnership,
less buildings, land, and de-
preciable assets $208,976.81
Selling price 172,000.00

Long-term capital loss $ 36,976.81

The taxpayers also claimed an ordinary deduction of $8,000 for an attorney's fee incurred in the entire transaction. The Commissioner of Internal Revenue determined that the fee was a capital expense since it was incurred in a capital transaction. The parties have agreed that if the Court decides the $36,976.81 loss sustained by the taxpayers was an ordinary loss, then $4,500 of the fee shall be allowed as an ordinary deduction. If the Court decides, however, that the loss was a capital loss, then the entire fee shall be considered a capital expense as determined by the Commissioner. (Tr. 31–32).

Pursuant to the determination made by the Commissioner a tax deficiency of $10,023.20 plus interest of $1,859.23 to May 18, 1962, was assessed against the taxpayers. Payment of the total sum, plus interest of $100.23 to July 11, 1962, was made by the taxpayers on July 11, 1962. The taxpayers' claim for refund, filed on September 25, 1962, was disallowed on January 25, 1963. (Compl. par. 1(c), 1(d), 1(e); Ans. par. 1(c), 1(d); Ex. P–3).

### THE LAW

The issue to be decided by the Court is whether the loss of $36,976.81 claimed by the taxpayers in the transaction hereinabove described should be treated as an ordinary loss, as they contend, or as a capital loss, as the Government contends. We are not concerned with that part of the partnership assets (land and depreciable items) which were transferred to the Texas corporation. The loss here in controversy only stems from the sale covering the miscellaneous assets (principally receivables and inventories). Also, it is not the amount, but the character of this loss which is in controversy.

The economic consequences, apart from income taxes, would be the same to the parties irrespective of whether the sale was a partnership interest or of property received as a distribution from the partnership.

The taxpayers' argument is that Congress has provided for different tax consequences dependent upon which procedure and form is followed. Where a partnership interest is sold, Section 741 specifies capital gain or loss treatment with exceptions not here involved; but, says the taxpayer, under Section 735, the sale by a distributee of property received as a distribution from a partnership keeps its character as either a capital item, or ordinary income or loss items, as if the distribution had been made by the partnership itself.

 It is the substance of a transaction rather than the form in which it is cast that governs the tax consequences. (Weinert's Estate v. Commissioner, 294 F.2d 750, 755, C.A.5th). The record here reveals that the substance of the transaction which gave rise to this lawsuit is far more than the sale of items of inventory. The essence of the transaction was a sale by the taxpayer of his interest in a partnership to his partner who continued to carry on the business. All the testimony on the subject, including that of the taxpayer and his attorney, leads us to that conclusion (Tr. 36, 37, 43, 44, 57–59, 70, 75–77, 81; Dep. 6–9, 11–14, 17). We consider this transaction in its entirety, for to fragment or otherwise isolate a minute segment of the transaction is diametrically opposed to the entire philosophy of our tax laws. The Court of Appeals for the Sixth Circuit made this plain in very cogent language (Mather v. Commissioner, 6 Cir., 149 F.2d 393, 397, certiorari denied, 326 U.S. 767, 66 S.Ct. 169, 90 L.Ed. 463):

> "It has been said too often to warrant citation, that taxation is an intensely practical matter, and that the substance of the thing done and not the form it took, must govern, and the courts have recognized that where the essential nature of a transaction is the acquisition of property, it will be viewed as a whole, and closely related steps will not be separated either at the instance of the taxpayer or the taxing authority. Commissioner of Internal Revenue v. Ashland Oil & Refining Co., 99 F.2d 588, 591 (C.

C.A.6); Prairie Oil & Gas Co. v. Motter, 66 F.2d 309 (C.C.A.10); Tulsa Tribune Co. v. Commissioner of Internal Revenue, 58 F.2d 937, 940 (C.C.A.10); Ahles Realty Corporation v. Commissioner of Internal Revenue, 71 F.2d 150 (C.C.A.2)."

■ An examination of this transaction in its entirety leaves no doubt but that the taxpayer sold his interest in the partnership to Mr. Stine and that the latter continued to operate the business formerly conducted by the partnership. It is, of course, an elementary principle that the sale or exchange of a partnership interest in a going concern is a capital transaction resulting in either a capital gain or a capital loss. It can in no way give rise to an ordinary loss as claimed by the taxpayer. Section 741 of the Internal Revenue Code of 1954, Appendix, infra; Stilgenbaur v. United States, 115 F.2d 283 (C.A.9th); McClellan v. Commissioner, 117 F.2d 988 (C.A.2d); Commissioner v. Shapiro, 125 F.2d 532, 144 A.L.R. 349 (C.A.6th); Williams v. McGowan, 152 F.2d 570, 162 A.L.R. 1036 (C.A.2d); Kaiser v. Glenn, 216 F.2d 551 (C.A.6th).

Here, Stine acquired more than a group of assets. He acquired the right to continue operating the business formerly conducted by the partnership using the same assets, owing the same creditors, and using the same brand names. The business operation did not cease even during the negotiations and was continued by Mr. Stine after the transaction was closed just as the parties always contemplated. (Tr. 63, 64, 72; Dep. 7; Ex. P–5).

We conclude that in this case Mr. Stine purchased the going business of the partnership "lock, stock and barrel." In fact, the contract reciting the sale of the assets even recites that he bought the taxpayer's half-interest in the cash owned by the partnership. (Ex. P–10).

The significance of the total sale of a partner's total interest in a partnership has been noted by the Court of Appeals for the Sixth Circuit in Commissioner v. Shapiro, supra (125 F.2d p. 535):

"It is fundamental in applying tax statutes that matters of substance are of first importance. The price paid for the property in question may have been based partly on assets excluded under the act from the phrase 'capital assets' such as inventories of property held by the partnership primarily for sale to customers in the ordinary course of its trade or business, but the sale made by respondent was not a sale of those assets. It is a well settled rule of law that the joint effects of a partnership belong to the firm and not the partners and that a partner has no individual property in any specific assets of the firm, instead the interest of each partner in the partnership property is his share in the surplus, after the partnership debts are paid and after the partnership accounts are settled. Blodgett v. Silberman, 277 U.S. 1, 10 [48 S. Ct. 410, 72 L.Ed. 749]. Respondent sold all of his interest in the partnership, tangible and intangible, as a going concern, which in all essentials is different from the ordinary assets of the partnership used in the usual course of its business."

It was made clear in this decision that whether or not the selling price was based on property other than capital assets is of no significance since the sale was the sale of the partner's total interest in the partnership. Coincidentally, the Court of Appeals for the Eighth Circuit had the same question before it in a case involving a taxpayer with the same name. United States v. Shapiro, 8 Cir., 178 F.2d 459. In concluding that the sale constituted the sale of a partnership interest, the court said (178 F.2d p. 461):

"The denial on October 10, 1949, of the petitions for certiorari in the cases of Commissioner of Internal Revenue v. Smith, 5 Cir., 173 F.2d 470, and Long v. Commissioner, 5 Cir., 173 F.2d 471, indicates to us that the Supreme Court is not dis-

posed to disturb the rulings of the Courts of Appeals of the Second, Third, Fifth, and Sixth Circuits and of the Tax Court to the effect that the sale of an interest in a partnership is the sale of a capital asset, regardless of the nature of the partnership properties. Uniformity in the construction of tax laws is important. * * *"

These cases, and others like them, illustrate what the court discussed in Hatch's Estate v. Commissioner, 198 F.2d 26 (C. A.9th), where, looking at the contract reciting the sale of assets, the court noted that while form should not be entirely ignored, the substance of the transaction must govern, for "as the old homely saying has it, 'The tail must not wag the dog.'" (198 F.2d p. 28).

The critical question here is whether in fact and in substance the petitioners actually sold their respective interests in the partnership, and the facts show that the substance of what occurred was a sale by the taxpayer of his entire interest in the partnership to his partner.

In arguing that the transaction requires ordinary loss treatment, taxpayer is arguing that the execution on July 7, 1958, of a document reciting the dissolution of the partnership and distribution of the assets actually accomplished both of these things on June 30, 1958, or seven days earlier. In truth and in fact neither occurred. The business did not terminate on June 30, 1958, for its operations were in progress through July 7, 1958, and there was no real distribution of assets. (Tr. 72–73). What really happened is that on July 7, 1958, the taxpayer sold his entire one-half partnership interest to Edward J. Stine. That the transaction was divided into two parts, one being the creation of a corporation, is of no consequence. The creation of the corporation and transfer to it of the fixed and depreciable assets in exchange for stock amounts to a partial distribution to the partners and was not a taxable transaction. Section 731 of the Internal Revenue Code of 1954, page 657 herein. Although the taxpayer

refers to it as the sale of "miscellaneous assets" (Br. 12) the second part of the transaction was a sale by him of what remained of his partnership interest. These same circumstances existed in Long v. Commissioner, 173 F.2d 471. In holding that there had been a capital transaction, the Court noted that there had been no cessation of business or complete liquidation and that there had merely been a sale of the partnership interest that remained after the distribution of some assets.

Moreover, the taxpayer erroneously states that the sale of the miscellaneous assets was preceded by the termination of the business on July 7, 1958, as of June 30, 1958. Section 708(b) of the Internal Revenue Code of 1954, (see page 657 herein), sets forth the only two circumstances under which a partnership shall be considered terminated for tax purposes:

"(a) *General Rule.*—For purposes of this subchapter, an existing partnership shall be considered as continuing if it is not terminated.

"(b) *Termination.*—

"(1) *General Rule.*—For purposes of subsection (a), a partnership shall be considered as terminated only if—

"(A) no part of any business, financial operation, or venture of the partnership continues to be carried on by any of its partners in a partnership, or

"(B) within a 12-month period there is a sale or exchange of 50 percent or more of the total interest in partnership capital and profits."

The testimony is uncontroverted that the business operations of the mill did not cease on June 30, or July 7, 1958 (Tr. 63–64, 72; Dep. 7), and the Treasury Regulations promulgated under Section 708 make it clear that even if the operations are limited to winding up the business, the partnership is not considered terminated until the only remaining as-

set, cash, is distributed to the partners and all other activity ends.

## CONCLUSION

Judgment is entered in favor of the Government. Taxpayers' complaint is dismissed with prejudice.