MILES H. MASON AND ELIZABETH D. MASON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mason v. Commissioner
Docket No. 23093-87.
United States Tax Court
T.C. Memo 1988-273; 1988 Tax Ct. Memo LEXIS 312; 55 T.C.M. (CCH) 1134; T.C.M. (RIA) 88273; June 27, 1988. Joseph Gardner, III, for the petitioners. Randye D. Lloyd and Donald W. Williamson, Jr., for the respondent. WILLIAMS
MEMORANDUM FINDINGS OF FACT AND OPINION WILLIAMS, Judge: The Commissioner determined a deficiency of $ 65,442.48 in petitioners' Federal income tax for their 1981 taxable year. The issues we must decide are (1) whether the tax consequences of petitioner Miles H. Mason's receipt of property pursuant to an agreement terminating two partnerships of which he was a member are governed by section 731 [1] as distributions from the partnerships; and (2) the extent to which gain must be recognized. *315 FINDINGS OF FACT This case was submitted fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. Petitioners, Miles H. and Elizabeth D. Mason, are husband and wife who resided at Duluth, Georgia when they filed their petition in this case. Miles H. Mason ("petitioner") has been a practicing physician since 1948. Beginning in 1957, petitioner entered into numerous business ventures with Larry P. McClure, Jr. Petitioner and McClure contributed approximately equal amounts of capital, and McClure managed their investments. Due to a business disagreement, petitioner and McClure entered into a Sales Contract and Agreement (the "Sales Contract") on April 14, 1981, pursuant to which they separated their business interests. Petitioner and McClure were partners in two partnerships. The assets of one partnership (the "Sky Valley partnership") consisted of property acquired in the area of the Sky Valley resort complex. This partnership used the accrual method of accounting and filed partnership information tax returns for each of the yeears it was in the business of making investments. The assets of the other partnership consisted of joint venture assets *316 acquired for investment purposes (the "Joint Venture Assets") consisting primarily of parcels of real estate. The parties have stipulated that the Joint Venture Assets were held by petitioner and McClure in a single partnership for Federal income tax purposes. The parties have treated the Joint Venture Assets and the Sky Valley partnership as two independent entities and have presented their arguments on that assumption. As a result, we also assume that the Joint Venture Assets and the Sky Valley partnership are two separate partnerships. As of 1981, petitioner and McClure also owned 100 percent of the stock of two corporations, Sky Valley, Inc. and Resort Campgrounds, Inc. At the time they agreed to dissolve the partnerships, petitioner and McClure each owned a fifty percent interest in the following entities: (1) Stock of Sky Valley, Inc.; (2) Stock of Resort Campgrounds of America, Inc.; (3) Assets of Sky Valley partnership; (4) Assets of Joint Ventures.
Pursuant to the Sales Contract, petitioner transferred his stock in Sky Valley, Inc. to McClure in exchange for promissory notes. Petitioner also transferred his stock in Resort Campgrounds of America, Inc. to McClure. *317 Nevertheless, only the treatment of the exchange of Sky Valley partnership assets and of the Joint Venture Assets is before the Court. The Sales Contract provided for the transfer of the various Sky Valley partnership assets and liabilities and other Joint Venture assets and liabilities resulting in petitioner's and McClure's each receiving a 100 percent interest in a divisible portion of assets and liabilities. Petitioner agreed to convey to McClure "all of his personal and undivided interest in the jointly owned real property lying in the City of Sky Valley and in the immediate vicinity of Sky Valley Resort." McClure agreed immediately upon receipt of petitioners' interest to convey all of the Sky Valley properties to Sky Valley, Inc. Petitioner also transferred his interest in other miscellaneous partnership realty to McClure. McClure agreed to transfer to petitioner his undivided interest in three parcels of real property referred to as the "Bagley Property," the "Jones Property" and the "Jewell Property." [2] Each conveyance was made subject to any outstanding indebtedness on the properties and each partner agreed to assume and pay such indebtedness and hold the other partner *318 harmless from any claim thereunder. The consideration for the exchange of real properties was an exchange and division of jointly owned properties. The assets and liabilities transferred between petitioner and McClure that are currently in issue had the following bases, fair market values and balances as of April 14, 1981: McClure
Mason
Basis [3]
Received
Received
Property
(Rounded)
FMV
FMV
A. Assets
I.  Sky Valley Partnership
Assets
Land:
Burnette Property (16A)
$    14,990
$    64,000
$          Geo. Grist (103.4A)
350,444
515,000
Geo. Grist (39.6A)
98,209
156,000
Jack Grist (32.1A)
77,744
96,000
Stephens Co. # 1
12,998
23,000
Stephens Co. # 2
67,897
165,200
Investments
40,650
40,650
Unamortized Loan Costs
3,612
3,612
Note Receivable -
Sky Valley
184,829
184,829
II.  Joint Venture Assets
Land:
Yount Land
32,250
222,720
Rabun-Kingswood
46,500
105,000
Rabun-Parrish
66,000
32,000
Jones Property
148,050
211,500
Jewell Property
1,151,423
1,280,000
Rabun Property (68A)
40,230
68,000
Bagley Property
257,270
581,456
Totals
$ 2,593,096
$ 1,676,011
$ 2,072,956
1/2 Each
$ 1,296,548
*319 Balance
(Rounded)
McClure
Mason
4/14/81
Assumed
Assumed
B. Liabilities
N/P - George H. Crist *
$   315,000
$   315,000
$          Accrued Interest
35,203
35,203
Accrued Taxes
3,750
3,750
N/P Federal Land Bank
224,822
224,822
N/P Federal Land Bank
295,519
295,519
N/P Frank Duff
1,800
1,800
N/P Sky Valley, Inc.
820,562
820,562
N/P Sterne, Ector, Griffin
16,322
16,322
N/P - H. Jones
36,323
36,323
N/P Capital Holding Co.
950,000
950,000
Totals
$ 2,699,301
$ 1,696,656
$ 1,002,645
1/2 Each
$ 1,349,650
In addition to what is now reflected on the above schedule, petitioner forgave *320 McClure's indebtedness to him in the amount of $ 100,000. Petitioner also received McClure's 50 percent share of a note receivable referred to as the "Bagley Note" that had a value as of April 14, 1981, of $ 111,350. [4]
Respondent issued his notice of deficiency on May 4, 1987, and petitioners timely filed their petition on July 13, 1987. OPINION Section 731(a)(1) provides that no gain will be recognized on a distribution by the partnership to a partner "except to the extent that any money distributed exceeds the adjusted basis of such partner's interest in the partnership immediately before the distribution." Any gain recognized pursuant to section 731(a) is treated as a gain from a sale or exchange of the partnership interest by the distributee partner. Section 741 provides "In the case of a sale or exchange of an interest in a partnership, gain or loss shall be recognized to the *321 transferor partner [and] * * * shall be considered as gain or loss from the sale or exchange of a capital asset, except as otherwise provided in section 751." Petitioner argues that the dissolution of the partnerships was accomplished through distributions from the Sky Valley partnership and the Joint Venture Assets and thus falls within section 731(a). Because the money that petitioner is deemed to have received pursuant to section 752(b) did not exceed his adjusted basis in the partnerships, petitioner argues that no gain or loss should be recognized. Respondent argues that petitioner and McClure intended to exchange partnership interests and, consequently, that section 741 governs the transaction. At issue, is whether petitioner and McClure exchanged property owned by them individually following liquidating distributions from the partnerships or exchanged partnership interests which resulted in the termination of the partnerships. Respondent correctly points out that the regulations under section 741 provide that that section may be applicable if one or two partners sells his interest to the other partner despite the partnership's termination pursuant to section 708(b). *322 Section 1.741-1(b), Income Tax Regs.; [5] see Karan v. Commissioner,319 F.2d 303, 307 (7th Cir. 1963), affg. a Memorandum Opinion of this Court; Kinney v. United States,228 F. Supp. 656 (W.D. La. 1964), affd. per curiam 358 F.2d 738 (5th Cir. 1966). We, nevertheless, do not believe that petitioner and McClure effected a section 741 exchange. We believe that the transaction between petitioner and McClure should properly be characterized for Federal income tax purposes as a pro rata distribution of partnership assets in liquidation pursuant to section 731 followed by a like-kind exchange pursuant to section 1031(a). The Sales Contract's language does not support respondent's view that the parties to it contemplated an exchange of partnership interests. *323 The Sales Contract pursuant to which petitioner and McClure separated their business interests is replete with terminology indicative of a sale or exchange. The agreement itself is called a Sales Contract. That language does not, however, necessarily suggest a sale or exchange of partnership interests. Indeed, the Sales Contract provides that petitioner and McClure have agreed to "exchange between themselves certain tracts of real property." The Sales Contract refers repeatedly to personal, not partnership, conveyances of property and contemplates exchanges of assets held individually rather than by the partnerships. Although the Sales Contract is silent on whether the exchanges themselves terminated the partnerships or whether the partnerships terminated prior to the partner-level exchanges, we believe that the parties intended to exchange their interests in property and not their interests in the partnerships. [6]
*324 Because the exchanges of property occurred between the individuals in their individual capacities and not as partners, we conclude that the partnerships terminated prior to the partner-level exchanges. Sections 731 and 1031(a), therefore, govern the transaction. The form of the transaction between the individuals comported with the prior dissolution of the partnerships. First, prior to the Sales Contract the individuals in effect received pro rata liquidating distributions from the partnerships pursuant to section 731. Second, the properties held individually were exchanged between the former partners. The Sales Contract, therefore, achieved exchanges of like-kind assets between the former partners. On a section 731 distribution, a partner recognizes gain only to the extent that any money distributed exceeds the partner's basis in his partnership interest. Petitioner received no cash from either partnership. Furthermore, on the termination of the partnership petitioner is deemed to have assumed his pro rata share of partnership liabilities. Petitioner, therefore,did not recognize any gain. Petitioner would urge us to stop our analysis at that point, but to do so would require *325 us to ignore the exchange of properties that subsequently occurred pursuant to the Sales Contract. Petitioner and McClure exchanged their interests in certain assets, primarily real estate, in a like-kind exchange. Section 1031 [7] provides for nonrecognition of gain or loss on an exchange of property held for productive use in a trade or business or for investment solely or property of "like kind" which is to be held for productive use in a trade or business or for investment. Thus, petitioner is required to recognize gain only to the extent of any property received that does not qualify as a like-kind property. Section 1031(b). Non-qualifying property includes relief from liability so that the excess of liabilities relieved over liabilities assumed in an exchange is gain which must be recognized. Section 1.1031(b)-1(c), Income Tax Regs.; Long v. Commissioner,77 T.C. 1045, 1073 (1981). *326 Pursuant to the Sales Contract, petitioner and McClure exchanged interests in various properties subject to all outstanding liabilities. McClure assumed liabilities in the amount of $ 1,696,656 of which $ 848,328, or 50 percent, represented petitioner's share. Petitioner assumed liabilities in the amount of $ 1,002,645 of which $ 501,322.50, or 50 percent, represented McClure's share. In addition, the parties have stipulated that by forgiving McClure's debt to him, petitioner assumed McClure's liability of $ 100,000. Petitioner also received McClure's share of a note receivable in the amount of $ 55,675, which was not like-kind property. Petitioner thus assumed McClure's liabilities in the amount of $ 601,322.50 ($ 501,322.50 + $ 100,000) from which McClure's share of the note receivable, $ 55,675, must be subtracted, leaving a net amount of liabilities assumed of $ 545,647.50. Petitioner must recognize gain pursuant to 1031(b) to the extent that his liabilities relieved by McClure in the amount of $ 848,328 exceeded the liabilities he assumed. Petitioner, therefore, had a long-term capital gain of $ 302,680.50 on the dissolution of the partnerships. Decision will *327 be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954 as in effect in 1981. ↩
2. Either McClure or Sky Valley, Inc. also agreed to pay petitioner $ 50,000 cash. The preamble to the Sales Contract states that as partial consideration for his conveyances to McClure, petitioner is to receive $ 50,000 from McClure and Sky Valley, Inc. Later in the contract, however, the $ 50,000 is listed as a debt solely of Sky Valley, Inc. to petitioner. Because McClure controlled Sky Valley, Inc. after the mutual conveyances, we would view the $ 50,000 payment in satisfaction of his obligations as coming from him. Respondent, however, did not assert the $ 50,000 as additional gain to petitioner in his notice of deficiency. We, therefore, assume that the cash came from Sky Valley, Inc., and the exchange between petitioner and Sky Valley, Inc. is not before the Court. ↩
3. The parties have not stipulated a separate basis for petitioner's partnership interests. The only permissible inference from this failure is that the basis of each partner's partnership interests are equal to half of the bases of the partnerships' properties increased by half of the partnership's liabilities. See generally sections 705, 722, 752. ↩
*. N/P = note payable ↩
4. In his notice of deficiency respondent incorrectly listed the value of the Bagley note as $ 115,350. Petitioner incorrectly reported his receipt of McClure's share of the note on petitioners' 1981 income tax return as $ 52,946. The correct value of the interest he received was $ 55,675. ↩
5. Section 1.741-1(b), Income Tax Regs., provides: (b) Section 741 shall apply whether the partnership interest is sold to one or more members of the partnership or to one or more persons who are not members of the partnership. Section 741 shall also apply even though the sale of the partnership interest results in a termination of the partnership under section 708(b). Thus, the provisions of section 741 shall be applicable (1) to the transferor partner in a 2-man partnership when he sells his interest to the other partner, and (2) to all the members of a partnership when they sell their interests to one or more persons outside the partnership. ↩
6. Respondent argues that the form of the transaction as evidenced by the Sales Contract was an exchange of partnership interests taxable under section 741, and that petitioners are bound by the form chosen absent "proof which in an action between the parties would be admissible to alter that construction or to show its unenforceability because of mistake, undue influence, fraud, duress, etc." Commissioner v. Danielson,378 F.2d 771, 775 (3d Cir. 1967), revg. and remanding 44 T.C. 549 (1965), cert. denied 389 U.S. 858 (1967). This Court has adopted the "strong proof" rule, pursuant to which a party cannot challenge the form of a transaction that he has chosen absent strong proof that the form did not comport with the intended substance. Lucas v. Commissioner,58 T.C. 1022, 1032 (1972). The Eleventh Circuit, to which an appeal would lie, however, has adopted the Danielson rule and, if relevant, it would be the applicable rule in this case. See Bradley v. United States,730 F.2d 718, 720 (11th Cir.), cert. denied 469 U.S. 882 (1984); Golsen v. Commissioner,54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940 (1971). The Sales Contract does not, however, suggest that the exchanges took place before or upon the termination of the partnerships. The presumptions of the Danielson rule and the strong proof are relevant when a party seeks to disavow an agreement that is clear on its face. The Sales Contract nowhere mentions the sale or conveyance of any partnership interest. Neither the Danielson↩ rule nor the strong proof rule is apposite here. 7. In 1981, section 1031 provided in relevant part: SEC. 1031. EXCHANGE OF PROPERTY HELD FOR PRODUCTIVE USE OR FOR INVESTMENT. (a) NONRECOGNITION OF GAIN OR LOSS FROM EXCHANGES SOLELY IN KIND. -- No gain or loss shall be recognized if property held for productive use in trade or business or for investment (not including stock in trade or other property held primarily for sale, nor stocks, bonds, notes, choses in action, certificates of trust, or beneficial interest, or other securities or evidences of indebtedness or interest) is exchanged solely for property of a like kind to be held either for productive use in trade or business or for investment. (b) GAIN FROM EXCHANGES NOT SOLELY IN KIND. -- If an exchange would be within the provisions of subsection (a), of section 1035(a), of section 1036(a), or of section 1037(a), if it were not for the fact that the property received in exchange consists not only of property permitted by such provisions to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property. ↩